IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROBERT C.,[1]

      Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

Civ. No. 1:19-cv-01199-AA

**OPINION & ORDER**

AIKEN, District Judge:

Plaintiff Robert C. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying benefits. The decision of the Commissioner is AFFIRMED and this case is DISMISSED.

## BACKGROUND

On September 23, 2016, Plaintiff filed a Title II application for a period of disability and disability insurance benefits. Tr. 153. Plaintiff's application alleged disability beginning June 3, 2016. *Id.* The application was denied initially on March 8, 2017, and upon reconsideration on May 3, 2017. Tr. 59, 71. Plaintiff filed a written request for a hearing before an Administrative Law Judge (ALJ) on July 14, 2017. Tr. 94. Plaintiff then appeared and testified at a hearing held at Eugene, Oregon on June 27, 2018. Tr. 29. On September 24, 2018, the ALJ issued a decision

---

[1] In the interest of privacy, this opinion uses only first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

finding that Plaintiff was not disabled from June 3, 2016, through the date of the decision. Tr. 23. Plaintiff requested review of the ALJ decision on November 20, 2018. Tr. 149. On June 7, 2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1. This appeal followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r*, 648 F.3d 721, 724 (9th Cir. 2011).

> The five-steps are: (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25; *see also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Bustamante*, 262 F.3d at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant

can perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, the ALJ found that Plaintiff met the insured requirements of the Social Security Act through December 31, 2019. Tr. 17. The ALJ also found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, June 3, 2016. *Id.*

At step two, the ALJ found that Plaintiff had the following severe impairments: morbid obesity; chronic obstructive pulmonary disease (COPD); heart disease; diabetes mellitus; degenerative disc disease; and a disorder of the wrist (with a history of remote surgery). Tr. 17. At step three, the ALJ found that none of Plaintiff's impairments or combination of impairments met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 19s.

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, except that he could occasionally climb ramps, stairs, ladders, ropes, or scaffolds. Tr. 20. Additionally, the ALJ found that Plaintiff could occasionally crawl and frequently, but not constantly, handle and finger with the right, dominant, upper extremity. *Id.* Plaintiff could also tolerate only occasional exposure to pulmonary irritants or workplace hazards such unprotected heights and exposed moving machinery. Tr. 20.

At step four, the ALJ found that Plaintiff could perform his past relevant work as a customer complaint clerk. Tr. 23. As a result, the ALJ found that Plaintiff has not been under a disability as defined in the Social Security Act from June 3, 2016, through the date of the decision. Tr. 23.

**STANDARD OF REVIEW**

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

**DISCUSSION**

Plaintiff alleges the ALJ erred by (1) excluding obstructive sleep apnea in the list of severe impairments at step two; (2) rejecting Plaintiff's subjective symptom testimony; and (3) rejecting the medical opinion of Plaintiff's primary care provider, Helen Carlson, D.O.

I. **Step Two**

Plaintiff argues that the ALJ should have included obstructive sleep apnea in the list of severe impairments at step two of the sequential analysis. Step two "is merely a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146-47 (1987)). It is "not meant to identify the impairments that should be taken into account when determining the RFC." *Id.* at 1048-1049. When the ALJ decides step two in the plaintiff's favor, the plaintiff "could not possibly have been prejudiced." *Id.* at 1049. Any alleged error at step two is therefore "harmless and cannot be the basis for a remand." *Id.* at 1049. (citing *Molina v. Astrue*, 674 F.3d 1115, (9th Cir. 2012)).

In this case, the ALJ resolved step two in Plaintiff's favor. Tr. 17-19. The ALJ found that Plaintiff passed the threshold by establishing the existence of several severe impairments. Tr. 17-19. Since the ALJ found step two in favor of Plaintiff, the ALJ did not err by excluding Plaintiff's obstructive sleep apnea in step two.

II. **Subjective Symptom Testimony**

Plaintiff asserts that the ALJ erred by discounting his subjective symptom testimony. To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. 20 C.F.R. § 416.929; *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). In the first stage, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). In the second stage, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons

for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).

Examples of clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Lingenfelter*, 504 F.3d at 1040; *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

The ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his alleged] symptoms are not entirely consistent with the medical evidence and other evidence in the record..." Tr. 21. The ALJ determined Plaintiff experienced "significant improvement in his symptoms." Tr. 22. For example, Plaintiff claimed his obesity and breathing issues made him unable to work as of June 3, 2016. Tr. 181. Two months later, in August 2016, Plaintiff's treatment provider Haitham Shaheen, M.D., found that Plaintiff's asthma was "not contributing much to his current symptoms," and was "well controlled." Tr. 253.

When weighing a claimant's allegations, the ALJ should consider the effectiveness of medication and other treatment that a claimant utilizes to relieve their symptoms. 20 C.F.R. § 404.1529(c)(3). Since starting medication for Plaintiff's chronic obstructive pulmonary disease, Plaintiff's forced expiratory volume 1 changed by 11% in October 2015. Tr. 329. On December 10, 2015, it was noted that Plaintiff's "O2 stats have improved the last 3 visits." Tr. 286. Since starting oxygen, Plaintiff "feels better when waking." Tr. 320. With treatment, Plaintiff's oxygen

levels continued to show "symptomatic improvement." Tr. 332. The ALJ reasonably weighed this evidence against Plaintiff's allegations of more severe limitations.

The ALJ found that Plaintiff's "activities indicate a higher level of function" than he alleged. Tr. 23. "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1112-13. Plaintiff testified at the hearing that he had fatigue, difficulty concentrating, and that he could not continue tasks for more than 20 to 30 minutes without stopping to rest and using his portable oxygen tank. Tr. 44-45. Plaintiff further claimed that he could not walk for more than 20 minutes before being out of breath. Tr. 46. Plaintiff reported that he has problems grasping and manipulating objects with his dominant hand. Tr. 45-46.

Other evidence in the record contradicts Plaintiff's testimony. Evidence showed that Plaintiff had no problems with personal care tasks, which generally involved grasping and manipulating objects like a toothbrush, razor, and eating utensils. Tr. 19, 203. This directly conflicts with Plaintiff's prior testimony about his difficulty using his hands. Plaintiff prepared his own meals in a "normal" amount of time, and did his own cleaning, laundry, and cooking every day although it took him "longer than usual." Tr. 203-04. Plaintiff went out daily by foot or by car to shop for two to three hours at a time. Tr. 204. These activities undermined Plaintiffs' claim that he was limited to 20 to 30 minutes of activity at a time. Plaintiff's hobbies included music, reading, travel, and motorcycles in which Plaintiff said he did "whenever possible" and did "fairly well." Tr. 205. These activities undermined Plaintiff's allegations that he had problems concentrating Tr. 206. These contradictions in the record support the ALJ's decision to give Plaintiff's subjective symptom testimony less weight.

Here, the ALJ did not arbitrarily discredit Plaintiff's testimony, nor was the credibility assessment patently unreasonable.

### III. The ALJ Reasonably Weighed Plaintiff's Primary Care Provider's Opinion

Plaintiff contends the ALJ erred by rejecting the opinion of treating physician Helen Carlson, D.O.

The ALJ is responsible for resolving conflicts in the medical record. *Carmickle*, 533 F.3d at 1164. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant[.]" *Turner v. Comm'r*, 613 F.3d 1217, 1222 (9th Cir. 2010) (internal quotation marks and citation omitted). An ALJ may reject the uncontradicted medical opinion of a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ may reject the contradicted opinion of a treating or examining doctor by providing "specific and legitimate reasons that are supported by substantial evidence." *Id.*

On June 19, 2018, Dr. Carlson completed a medical source statement. Tr. 465-68. Dr. Carlson wrote that she had treated Plaintiff since November 2016. Tr. 465. She diagnosed Plaintiff with renal cell carcinoma (post resection June 2018); associated neuropathic pain from pre-diabetes; obstructive sleep apnea; obesity; diastolic congestive heart failure; tobacco abuse; and asthma. *Id.* Dr. Carlson wrote that Plaintiff would constantly suffer from pain and weakness in a workday and frequently suffer from fatigue and shortness of breath. Tr. 468. She wrote that Plaintiff would be off-task ten percent of the time for even simple work tasks due to his symptoms. *Id.* Dr. Carlson wrote that Plaintiff would miss sixteen or more hours of work from even a simple, routine job due to his impairments, symptoms, or medications. *Id.* She explained that Plaintiff

would miss these hours of work due to his constant pain and oxygen levels below eighty-eight percent at rest. *Id.*

An ALJ "may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti*, 533 F.3d at 1041 (citations omitted). In this case, although Dr. Carlson identified several work-related limitations arising from Plaintiff's impairments, she explicitly stated the assessed restrictions were "per patient opinion based on [a] phone call" that she had with him the day she filled out the form. Tr. 468. Dr. Carlson reported that she could not do a physical assessment of Plaintiff because her office was not "adequately equipped to accurately perform [one]." Tr. 468. Since Dr. Carlson derived her opinion entirely from Plaintiff's own self-reports, and the ALJ reasonably discounted Plaintiff's subjective symptom testimony for reasons discussed in the previous section, the ALJ reasonably gave Dr. Carlson's opinion less weight.

The Court concludes that the ALJ properly supported their decision to assign little weight to Dr. Carlson's opinion.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is AFFIRMED and this case is DISMISSED.

It is so ORDERED and DATED this ___13th___ day of April 2022.

    /s/Ann Aiken
    ANN AIKEN
    United States District Judge